UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TRACY L. HICKS, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
|      vs. ) | CAUSE NO.  1:08-cv-1256-WTL-TAB |
| ) | |
| UPPER CUTTERS I, INC., ) | |
| ) | |
|    Defendant. ) | |

### ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendant's motion for summary judgment.  The motion is fully briefed, and the Court, being duly advised, **DENIES** the Defendant's motion for the reasons set forth below.

### SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor.  *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).  Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of

evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## BACKGROUND

The facts of record viewed in the light most favorable to Plaintiff Tracy Hicks are as follows.

Hicks joined Defendant Upper Cutters I, Inc. ("Upper Cutters") on January 27, 2007, as an assistant manager at an Upper Cutters hair salon located at 4875 West 56th Street, in Indianapolis, Indiana ("the Georgetown salon"). Hicks was promoted to manager of Upper Cutters' Georgetown salon on March 7, 2007. On July 28, 2007, Hicks was also given managerial responsibility for a second Upper Cutters salon at Hazel Dell. However, Hicks surrendered her position as the manager of the Hazel Dell salon three weeks later, on August 18, 2007.

Just before Hicks took over as manager of the Georgetown salon, Upper Cutters moved the salon from the "Marsh Center" to a new facility "right across the street." *See* Jones Dep. 45:13-25. After the move and Hicks' assumption of managerial responsibility, the Georgetown salon's sales and performance figures declined. Between April 2007 and February 2008, the salon's sales volume suffered a year-over-year decline and its payroll percentage deteriorated, reaching a low of 58.7%.[1] Hicks' time cards during this period regularly showed that she worked significant over-time, and yet Hicks continually struggled to submit corporate reports to her superiors at Upper Cutters in a timely fashion.

---

[1] According to Upper Cutters, a well-functioning salon's payroll percentage should be close to 40%. *See* Jones Dep. 58: 3-4. The payroll percentage reflects the customer volume; a higher percentage means fewer customers are frequenting a salon. *See id.*

At the same time, Upper Cutters owner, Frank Weddle, expressed to the company's general manager, Rebecca Jones, that the Georgetown facility's staff was not racially representative of its customers. To remedy this, Weddle told Jones to recruit white stylists to work at the Georgetown salon and other Upper Cutters salons so that the company could achieve "racial balance" amongst its stylists. Jones Dep. 11:21-24; 12:2-3; 40:5-18.[2]

In January of 2008, Jones and Weddle reviewed all nine of Upper Cutters' salons for profitability and business effectiveness. During that review, Jones and Weddle had a series of discussions regarding underperforming salons and singled out three salons as particularly poor performers: Georgetown, Noble West, and Hazel Dell. Hicks managed Georgetown, while Robin Eaton, a Caucasian female, managed both the Noble West and Hazel Dell locations. Acting on the results of their review, Jones and Weddle decided to demote Robin Eaton from manager to stylist because the salons she managed failed to meet their performance expectations. Weddle authorized Jones to terminate Hicks, stating that Hicks "could not be salvaged." Jones Dep. 42:8-9; Weddle Reply Aff. ¶ 9. The reasons why Weddle believed Hicks could not be salvaged are disputed by the parties.

Following her discussion with Weddle, Jones contacted Hicks on February 5, 2008, via telephone to arrange a meeting. During the course of their telephone conversation, Hicks asked Jones if Upper Cutters intended to fire her. Jones told Hicks that she was to be terminated the next day and that Hicks should meet with Jones in person to discuss her transition. Hicks refused Jones' invitation, and Hicks left Upper Cutters employment on February 5, 2008. Upper

---

[2] The Court recognizes that Weddle denies that he sought to achieve racially-balanced staffing at the Upper Cutters salons he controlled, declaring that he "never asked or encouraged Rebecca Jones to hire more white employees at the Georgetown location." Weddle Reply Aff. ¶ 3. However, for summary judgment purposes Jones' testimony must be taken as true; it will be up to the jury at trial to determine which version of events it believes.

Cutters replaced Hicks with a seasoned manager, Vickie Bland, who is Caucasian.

## DISCUSSION

Hicks alleges that she was terminated because of her race in violation of Title VII of the Civil Rights Act of 1964 (codified at 42 U.S.C. § 2000e-2) and Section 1981 of the Civil Rights Act of 1866 (codified at 42 U.S.C. § 1981). Upper Cutters now moves for summary judgment. As evidence is the axis on which summary judgment turns, the Court first considers Upper Cutters' motion to strike certain portions of Hicks' response brief and accompanying exhibits and then considers Upper Cutters' motion for summary judgment.

### *Motion to Strike*[3]

Upper Cutters first asks the Court to strike the affidavits of Summer Tucker Sturdivant and Denise Badger because they are unsigned. Upper Cutters is correct that an unsigned, unsworn affidavit does not comply with the requirements of Federal Rule of Civil Procedure 56(e)(1) and 28 U.S.C. §1746 and therefore cannot be considered as evidence in support or in opposition to a motion for summary judgment. Despite having notice of these technical defects, Hicks has not sought to correct them. Accordingly, neither the Sturdivant nor the Badger affidavit is admissible for purposes of summary adjudication and are therefore **stricken** from the record.

Upper Cutters next moves to strike those portions of Hicks' statement of material facts that rely on either the Sturdivant or Badger affidavit. The statement of material facts found in paragraphs 7 through 21 of Hicks' opposition to Upper Cutters' motion for summary judgment

---

[3] Consistent with this court's local rules, Upper Cutters included its motion to strike within its reply brief rather than filing a separate motion. *See* Local Rule 56.1(f) ("Collateral motions in the summary judgment process, such as motions to strike, are disfavored. Any dispute regarding the admissibility or effect of evidence should be addressed in the briefs.").

(all at Docket # 36) rely entirely on either the Sturdivant or Badger affidavit. As explained above, these affidavits are not admissible for purposes of summary judgment and, therefore, the Court will not consider those portions of Hicks' statement of material facts found in paragraphs 7 through 21 that rely upon them.

Upper Cutters next argues that Hicks' statement of material fact 26 is "not supported by the cited material." Paragraph 26 of Hicks' opposition states that "Rebecca Jones was uncomfortable with Weddle's remarks about staffing." To support this, Hicks cites to pages 12 and 13 of the transcript of Rebecca Jones' deposition. Those pages do, in fact, support the assertion that Jones was uncomfortable with Weddle's behavior as it related to Upper Cutters staffing. On page 12, lines 16-19 of her deposition transcript, Jones testified that she "was uncomfortable with some things that had been said and my exact words was [sic] that [Weddle] needed to watch what was said at certain times . . . ." Just a few lines of testimony later, on page 13, lines 1-2, Jones linked her discomfort to Weddle's "wording . . . with the staffing." Since pages 12 and 13 of Jones' deposition demonstrate that Jones was "uncomfortable with Weddle's remarks about staffing," Upper Cutters' motion to strike the statement of material fact found in paragraph 26 is denied.

The remainder of the statements that Upper Cutters seeks to strike are not relevant to the Court's ruling and therefore the Court need not resolve the issue of their admissibility at this time.

### *Motion for Summary Judgment*

Despite the narrowed evidence available to her, Hicks presents sufficient evidence that impermissible racial considerations played a role in her termination by Upper Cutters to survive summary judgment. Under Title VII, an employer may not discharge an individual because of

5

that individual's "race, color, religion, sex, or national origin . . . ."  Title VII's "broad, overriding interest . . . is efficient and trustworthy workmanship assured through fair and racially neutral employment and personnel decisions.  In the implementation of such decisions, it is abundantly clear that Title VII tolerates no racial discrimination, subtle or otherwise." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 901 (1973).

The Seventh Circuit recognizes two modes by which a plaintiff can demonstrate a racial motive for adverse employment decisions: direct or indirect.  *Troupe v. May Dep't Stores Co.* 20 F.3d 734,  738 (7th Cir. 1994).  "Direct evidence of race discrimination 'is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer." *Davis v. Con-Way*, 368 F.3d 776, 783 (7th Cir. 2004).  The direct method of proof takes two forms:  "[t]he first is an outright admission by the decision maker that the challenged action was undertaken because of the appellant's race.  The second consists of a 'convincing mosaic of circumstantial evidence . . . that points directly to a discriminatory reason for the employer's action."  *Id.*; *see also Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003).  Only in the absence of direct evidence of race discrimination does the familiar burden-shifting analysis articulated by the United States Supreme Court's decision in *McDonnell Douglas*  apply.  *Adams v. Wal-Mart Stores*, 324 F.3d 935, 939 (7th Cir. 2003); *Davis*, 368 F.3d at 783; *Cerutti*, 349 F.3d at 1061.

A plaintiff survives summary judgment under the second, "mosaic," standard for direct proof if she presents evidence from which a "rational trier of fact could reasonably infer that the defendant had fired the plaintiff because the latter was a member of a protected class."  *Troupe* 20 F.3d 734, 737 (7th Cir. 1994).    A trier of fact can draw such inferences from ambiguous statements, suspicious timing, discrimination against other employees, or "[o]ther pieces of

evidence none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff." *Id.* Said another way, if the aggregation of circumstantial evidence is sufficient to suggest that an employment-related decision was based on race, summary adjudication is inappropriate. *See Sylvester v. SOS Children's Vills Ill., Inc.*, 453 F.3d 900, 904 (7th Cir. 2006).

The circumstantial evidence presented by Hicks is sufficient for her to survive Upper Cutters' motion for summary judgment under the mosaic standard. Upper Cutters offers evidence that it fired Hicks for cause. The Georgetown salon Hicks managed suffered year-over-year declines in its profits, while its payroll ratio steadily increased. Despite these declines, Hicks regularly worked overtime while expressing to her supervisors that she was unable to complete all of her managerial duties. Adding to these indicia of poor performance, the staff at the Georgetown facility repeatedly expressed frustration with Hicks to Upper Cutters management.

Hicks, on the other hand, presents evidence, in the form of Upper Cutters' General Manager Rebecca Jones' deposition testimony, that Upper Cutters based its decision to terminate in part on racial considerations. Jones testified that she often made staffing decisions after consulting with Upper Cutters owner Frank Weddle. Jones further testified that Weddle pressured her "on numerous occasions" to hire in a fashion designed to ensure that Upper Cutters "kept a balance" between white and African-American stylists. Jones Dep. Trans. at 11:13 – 12:3. Indeed, when Upper Cutters began seeking a replacement manager for Hicks at its Georgetown salon, Jones testified that she and Weddle both desired a white replacement "to balance the store" because Weddle "believed that [Upper Cutters] was not representing" its white clients who then constituted 90 percent of the Georgetown salon's customer base. *See*

Jones Dep. Trans. 50:5-10.  Indeed, at a meeting in March of 2008, Weddle told Jones to hire more white stylists for Upper Cutters' salons at Georgetown (where Hicks worked), Noble West, and Traders Point.  Jones Dep. Trans. 54:13-25.  Finally, Jones testified that she did not believe that staff complaints about Hicks justified her termination.  Jones Dep. Trans. 72:22-23.

 Bolstering Hicks' assertion that race was a factor in her termination is the fact that Upper Cutters demoted rather than terminated a similarly-underperforming white manager at its Hazel Dell and Noble West salons.  Robin Eaton, a white employee, struggled to manage Upper Cutters' Hazel Dell and Nobel West salons, both of which reported declines in profitability during Eaton's tenure.  However, unlike Hicks, Robin Eaton was allowed to remain with the company after being removed from her management position for poor performance.  Def. Br. at ¶¶ 52-57.  And both the Hazel Dell and the Noble West locations were among those for which Weddle had specifically instructed Jones to hire more white stylists.  Jones Dep. 53:13-25.  The decision to retain Robin Eaton at a salon for which Weddle sought more white employees suggests that Upper Cutters decided to terminate Hicks because she was African-American.

 Although none of the evidence discussed above is independently sufficient to prove that racial discrimination played a role in Hicks' termination by Upper Cutters, when the evidence is considered as a whole it presents a sufficiently clear mosaic for Hicks to survive the instant motion for summary judgment.  While Upper Cutters points to evidence indicating that its Georgetown location was less profitable and productive during Hicks' tenure as manager, Hicks points to Upper Cutters' stated interest in achieving "racial balance" at its salons and its decision to demote rather than terminate a similarly-situated white employee.  Drawing, as the Court must on summary judgment, all reasonable inferences in Hicks' favor, the evidence presented forms a sufficient  mosaic of circumstantial evidence such that a reasonable jury could conclude that

8

Upper Cutters used impermissible racial factors when it terminated Tracy Hicks. *See Sylvester*, 453 F.3d at 904.  Accordingly the motion of summary judgment must be and hereby is **DENIED**.

    SO ORDERED:  04/16/2010

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Bobby A. Potters
POTTERS LAW FIRM
bpotters@aol.com

Gregory A. Stowers
STOWERS & WEDDLE PC
gstowers@swh-law.com